OPINION OF THE COURT
Scott A. Miller, J.
Defendant, Benjamin Spradlin, moves for dismissal of the misdemeanor information charging one count of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), arguing legal insufficiency pursuant to CPL 100.40 and illusory statement of readiness pursuant to CPL 30.30. The court has reviewed the defendant’s moving papers and the People’s responses in opposition thereto, and has analyzed the accusatory instrument on both hearsay and element grounds. (CPL 100.40 [1] [c].)
The accusatory instrument, sworn to by Ithaca Police Officer Christopher Cady on November 18, 2016, and filed with this court on November 21, 2016, alleges based upon direct knowledge that defendant, on November 12, 2016, in the City of Ithaca, knowingly and unlawfully,

“possessed] in his left front pant pocket a cigarette pack containing a purple in color piece of paper. Folded within the purple paper was a quantity of 9 
*744
white pills that contained a M 36 logo on each individual pill. After referring to Drugs.com the pills were identified as M 36 (Methylphenidate Hydrochloride extended release 36 mg) which is classified as a Schedule 2 controlled substance. Also contained within the purple paper was an additional quantity of 3 white pills that contained a logo of alza 36. After referring to Drugs.com the pills were identified as alza 36 (Methylphenidate hydrochloride extended release 36 mg) which is classified as a Schedule 2 controlled substance.”

Defendant argues that the accusatory instrument is jurisdic-tionally defective because the only means of identification of the controlled substance is based upon hearsay, i.e., Officer Cady’s referral to the website drugs.com. Defendant argues that although this motion is made well beyond the 45-day time limit for motions imposed by CPL 255.20 (1), the defect is non-waivable, the information must be dismissed, and the People are time-barred from amending the accusatory instrument, as their initial statement of readiness must be deemed illusory. (CPL 30.30.) The People oppose arguing that (1) an alleged hearsay defect in a pleading is waivable and (2) the identification of the illegal drug based upon reference to drugs.com is not hearsay, and there are no defects in the misdemeanor information. The court has conducted facial sufficiency analyses under both Alejandro, infra (non-waivable jurisdictional missing element) and Casey, infra (waivable hearsay defect).
For an information to be legally sufficient, it must contain nonhearsay allegations which establish, if true, every element of the offense charged and defendant’s commission thereof (CPL 100.40). CPL 100.40 (1) expressly states that in order for an information to be legally sufficient:
“(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the Defendant committed the offense charged in the accusatory part of the information; and
“(c) Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the Defendant’s commission thereof.”
In People v Casey (95 NY2d 354 [2000]), the Court of Appeals explained, “So long as the factual allegations of an information *745 give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” {Id. at 360.) In deciding a defense motion to dismiss an information for facial insufficiency, the court must “view the evidence in a light most favorable to the People” (People v Waite, 108 AD3d 985, 985 [3d Dept 2013]). This court must strictly limit its CPL 100.40 legal sufficiency review to the information and attached supporting sworn statements. Here, the People merely must demonstrate that there exists reasonable cause to believe that the defendant committed criminal possession of a controlled substance in the seventh degree. This standard is far less stringent than the proof of guilt beyond a reasonable doubt required in order to convict at trial. (CPL 70.20.)
Defendant argues that the officer’s reliance upon drugs.com is hearsay, and the information is consequently jurisdictionally defective. Assuming, for the sake of argument, that reliance upon drugs.com to identify the prescription pills is hearsay, the defendant has nonetheless waived such alleged defect by failing to challenge by way of a timely omnibus motion. (CPL 255.20 [1]; People v Casey, 95 NY2d 354 [2000].) Defendant’s reliance upon People v Alejandro (70 NY2d 133 [1987]) is incorrect. The Alejandro Court held that an accusatory instrument that completely fails to allege one or more elements of a crime is jurisdictionally defective and such defect is non-waivable, even if not raised until after trial. However, the Alejandro Court addressed a missing element, not whether a factual element based upon hearsay is a non-waivable jurisdictional defect. The Court of Appeals answered this specific question 13 years later in People v Casey, when it ruled that hearsay in an accusatory instrument is a waivable non-jurisdictional defect. Defendant’s alleged “hearsay objection had to be preserved by timely pretrial motion or it was waived” {Casey at 364 [emphasis added]). In People v Keizer (100 NY2d 114, 121 [2003]), the Court of Appeals once again held that “any hearsay defect [is] waived by a failure to raise the issue in a pretrial motion.” The Keizer Court expressly relied upon Casey, which, as the People correctly assert, held that hearsay defects in accusatory instruments are “nonjurisdictional, and, thus, waivable” (Keizer at 121). Defendant’s motion to dismiss the information based upon the alleged hearsay defect pursuant to CPL 100.40 is denied.
*746 Defendant also argues that Officer Cady’s reliance upon what defendant describes as the “rank hearsay contained in the website drugs.com” in order to identify the illegal pills is “not legally sufficient to properly establish a prima facie case.” (Defense counsel’s affirmation, para 14.) Although referring to “rank hearsay,” it appears that the defendant is also moving for dismissal based upon the failure to allege a legally sufficient basis to establish the essential element that the items possessed by defendant were an unlawful substance, specifically, methylphenidate hydrochloride. Although characterized as a hearsay objection, it appears defendant is also moving for dismissal based upon an alleged non-waivable jurisdictional defect for failure to sufficiently allege an essential element of the crime. Defendant is not time-barred from bringing this type of challenge (People v Alejandro).
Defendant argues that the officer’s basis of identifying the unlawful drug is unreliable, and consequently, legally insufficient because the officer did not utilize a field test and only relied upon reference to the website, drugs.com. Defendant is correct, in that a conclusory statement from a police officer, without stating the basis of his belief that a particular substance is an illegal drug, does not meet the prima facie requirement of CPL 100.40.
In People v Kalin (12 NY3d 225, 229 [2009]), the Court of Appeals explained that,
“[sjtanding alone, a conclusory statement that a substance seized from a defendant was a particular type of controlled substance does not meet the reasonable cause requirement (see People v Dumas, 68 NY2d 729, 731 [1986]). Rather, the factual allegations must establish the basis of the arresting officer’s belief that the substance seized was an illegal drug—for example, an officer may allege that the accused made a statement identifying the drug.”
However, the Kalin Court also made it clear that
“[the] prima facie case requirement is not the same as the burden of proof beyond a reasonable doubt required at trial (People v Henderson, 92 NY2d at 680), nor does it rise to the level of legally sufficient evidence that is necessary to survive a motion to dismiss based on the proof presented at trial (see Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 100.40, at 388 [2004 ed.]).” (Kalin at 230 [internal quotation marks *747 omitted].)
The Court of Appeals has unambiguously held that a ‘laboratory report is [not] necessary” in order to sufficiently plead that a particular substance is an illegal drug. (Id. at 231.) The Kalin Court found the basis of an officer’s identification of marijuana and heroin, even in the absence of any field test or laboratory report, legally sufficient where the officer affirmed that he relied upon his experience and training combined with his direct observations of the “packaging” and “what the substances looked like.” (Id.)
In the matter before this court, the officer does not allege that he identified the pills based upon his training and experience, but, rather, affirms that the only basis for his conclusion was his direct observations of the color and imprint markings on the pills and his reference to the online database drugs.com. The question for this court is, based upon the reasoning of Kalin, whether an accusatory instrument is facially sufficient, where, absent any allegation of training and experience and absent any lab report, the officer relied upon only the color and imprint markings on the pills and reference to drugs.com in order to identify them.
In People v Price (35 Misc 3d 1203[A], 2012 NY Slip Op 50548[U] [Crim Ct, Richmond County 2012]), the trial court held that an accusatory instrument charging criminal possession of a controlled substance in the seventh degree was legally sufficient where the officer alleged that he identified the pills as oxycodone based only upon his training and experience in the recognition of drugs and the markings on the pills, with which he was familiar, even though the officer did not describe the markings on the pills in the accusatory instrument. The Price court noted that title 21, part 206 of the Code of Federal Regulations, section 206.10, which is entitled, “Code imprint required,” mandates that all prescription drugs are “clearly marked or imprinted with a code imprint that, in conjunction with the product’s size, shape, and color, permits the unique identification of the drug.” (Price at 3-4.) The Price court explained:
“The importance of these labels, making for an easy and certain identification, is obvious. The imprints, put there by the original manufacturer, help protect the lives and well being of legitimate prescription users. Indeed, individuals who use several drugs rely on these markings to ascertain which drug is *748 which so as to avoid complications from unhealthy, if not lethal, combinations. Doctors, health care providers and pharmacists rely on these markings to make positive identifications for the health and well being of their patients. Since these pills must contain markings to insure content certainty, a far cry from the street drugs often encountered in criminal cases, there is less, not more, need for a lab report to definitively identify prescription pills than cocaine, heroin and marijuana, for which the law does not now require a lab report, when an officer alleges recognition based upon his training and experience. Thus, it is logical and reasonable to extend the holding of Kalin to prescription pills.”
(Id. at 4-5.)
Extending the sound logic of Price only partially answers the question before this court. In Price, the officer possessed the training and experience necessary to recognize a prescription pill based upon its appearance and imprinted markings. Here, the officer does not allege any training and experience, but what he does allege is that he directly observed “nine white pills that contained a M 36 logo on each individual pill” and “three white pills that contained a logo of alza 36,” which were identified as methylphenidate hydrochloride by the online database, drugs.com. The question before this court then is whether an accusatory instrument is legally sufficient when the deponent officer, in the absence of any alleged training and experience, specifically describes the color and imprint markings on pills and identifies them using drugs.com.
Only two reported trial level courts have previously examined accusatory instruments in the context of identifying pills by reference to drugs.com. In People v Watson (39 Misc 3d 1217[A], 2013 NY Slip Op 50644[U] [Albany City Ct 2013]), a charge of criminal possession of a controlled substance in the seventh degree was held to be legally insufficient where the officer alleged that the defendant possessed hydrocodone and alprazo-lam pills in unlabeled bottles, and that the officer based his identification only upon his training and experience and reference to the website, drugs.com. Relying upon the logic of Kalin, the Watson court explained that “[t]he officer did not describe the markings on the pills or even state that he identified the pills based upon their markings. Nothing was stated as to why he could identify the pills as Hydrocodone with the help of drugs.com.” (Watson at 3.) Unlike Price in Watson, the officer, *749 although aided by drugs.com, did not expressly affirm that he identified the pills based upon their markings, nor even describe the pills. The Watson officer’s purported identification of hydrocodone and alprazolam pills with only the aid of drugs.com and without describing any markings on the pills was legally insufficient and was merely a “conclusory statement . . . [which] standing alone, [was] insufficient to meet the reasonable cause requirement” (id. at 3).
Most recently, in People v Healy (55 Misc 3d 895 [Poughkeepsie City Ct, Mar. 3, 2017]), the defendant was also charged with Penal Law § 220.03, based upon the police officer’s affirmation that the defendant possessed a single “green pill” without noting any imprint markings, which he identified as oxycodone by referral to “a pill identification source, drugs.com” (id. at 898). Once again, following Kalin, the Healy court found that where a complaint lacked an allegation that the officer identified the pill either based upon his training and experience or based upon unique “markings on the pill,” the factual allegations were legally insufficient to establish the basis of the officer’s belief that the pill was an unlawful prescription drug (id. at 898).
In the accusatory instrument before this court, the police officer, while not claiming any training or experience, does describe that nine of the pills were “white” and were imprinted with a “M 36 logo” and three of the pills were “white” and imprinted with a logo of “Alza 36,” and all were identified as methylphenidate hydrochloride when he referred to drugs.com. Under the rationale of Kalin and Price, this court finds that the accusatory instrument has set forth all essential elements of the alleged crime, even in the absence of a lab report or a claim by the officer of training and experience in the identification of prescription pills. The officer clearly described both the color and the imprint markings on the pills, which he directly observed, and he further explained that he referred to drugs.com as his basis to identify such pills. The officer’s direct observations are not hearsay.
This court takes judicial notice of the online database, drugs.com. The drugs.com online database is an online field guide, akin to those for identifying animals and plants. By noting a particular prescription pill’s color and logo imprint a police officer can readily identify the pill by entering the information into the database. An actual image of the pill then appears, which a police officer can use as further comparison to the pill *750 being directly observed. No special police training or experience is required. Even a layperson could theoretically supply a legally sufficient accusatory instrument under these circumstances. Here, the defendant has been provided with sufficient factual allegations in order to prepare a defense and also to prevent him from being placed twice in jeopardy for the same offense (Casey at 360). While it may be best practice for an officer to recite his training and experience, such absence is not fatal to an accusatory instrument where the officer specifically identifies the appearance of pills which includes the imprint markings as required by federal law (21 CFR 206.10) and enters such data into the drugs.com database.
Courts may take judicial notice of many matters that are beyond dispute such as “official, scientific, [and] historical matters.” (Lee S. Kreindler et al., New York Law of Torts § 20:33 [16 West’s NY Prac Series 2016].) For example, a court may take judicial notice that, in general, human beings have two eyes, two ears, two arms and two legs, and dogs walk on all fours. A court may take judicial notice that the sun appears to rise in the east and sets in the west. In Hunter v New York, Ontario & W. R.R. Co. (116 NY 615, 623 [1889]), the Court of Appeals relied upon an article entitled, “Giants,” from the Encyclopedia Britannica, of which it took judicial notice that a seated man could not strike his head against an obstruction 4 feet 7 inches above the place on which he was sitting unless he were over 8 feet and 10 inches in height. (See also People v Tarrats, 42 Misc 3d 1235[A], 2013 NY Slip Op 52303[U] [Ithaca City Ct 2013] [judicial notice that an address was located in a mixed industrial and residential area and of the temperature and time of sunset].)
Here, the trial court does not have before it a case dealing with giants, but rather alleged malfeasors of a most minuscule nature, unlawfully possessed prescription pills. The court takes judicial notice that the online database drugs.com is akin to that of encyclopedias of the pre-Internet era. While courts must be cautious before taking judicial notice, especially in criminal cases during trial, at the pretrial motion stage, when viewing the evidence in the light most favorable to the People, the court finds that the accusatory instrument provides reasonable cause and states a prima facie case that the defendant knowingly and unlawfully possessed a controlled substance.
Defendant’s CPL 100.40 motion for dismissal based upon the alleged failure to state a prima facie case is denied.
*751 The People’s statement of readiness was not illusory. The People stated readiness on the record in open court on December 9, 2016, a mere 18 days after the accusatory instrument was filed on November 21, 2016. The People were in fact ready as such readiness statement was made upon a legally sufficient information (People v Kendzia, 64 NY2d 331 [1985]). Defendant’s CPL 30.30 motion is denied.